UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY            08 CV 4844 (DLC)
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN              **DECLARATION**
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS
OF AMERICA FUND and THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR-MANAGEMENT
CORPORATION, by MICHAEL J. FORDE, and PAUL
O'BRIEN, as TRUSTEES, and MICHAEL J. FORDE,
as EXECUTIVE SECRETARY-TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

                                   Plaintiffs,

          -against-

EMPIRE INTERIOR SYSTEMS, INC.,

                                   Defendant.
------------------------------------------------------------------------X

      ANDREW GRABOIS, declares as follows under penalty of perjury pursuant to

28 U.S.C. 1746:

      1.     I am an attorney admitted to practice in the State of New York and a

member of the bar of this Court.

      2.     Annexed hereto as Exhibit "A" is a true and correct copy of the Collective

Bargaining Agreement between the Association of Wall-Ceiling & Carpentry Industries

of New York, Incorporated and the District Council of New York City and Vicinity of the

United Brotherhood of Carpenters and Joiners of America, AFL-CIO.

3.     Annexed hereto as Exhibit "B" is a true and correct copy of a relevant

excerpt of the membership of the Association of Wall-Ceiling & Carpentry Industries of

New York, Incorporated.

4.     Annexed hereto as Exhibit "C" is a true and correct copy of the Notice of

Intention to Arbitrate, dated January 17, 2007, sent by Plaintiffs to the Defendant.

5.     Annexed hereto as Exhibit "D" is a true and correct copy of the Notice of

Hearing, dated March 7, 2008, sent by the Arbitrator to the Defendant.

6.     Annexed hereto as Exhibit "E" is an Affidavit of Services.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        July 22, 2008

ANDREW GRABOIS

# AGREEMENT

## between

# THE ASSOCIATION OF WALL-CEILING & CARPENTRY INDUSTRIES OF NEW YORK, INCORPORATED

## and

# THE DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO

July 1, 2001 - June 30, 2006

EXHIBIT
1A

# INDEX

**Article**

|  |  | Page |
|---|---|---|
| I. | Objectives | |
| II. | Association Authorization | 1 |
| III. | Jurisdiction | 2 |
| IV. | Union Recognition | 3 |
| V. | Union Security | 14 |
| VI. | General Foreman - Foreman Hiring Schedule | 14 |
| VII. | Job Referral System | 16 |
| VIII. | Lumping Prohibited | 18 |
| IX. | Geographical Jurisdiction | 20 |
| X. | Joint Venture | 21 |
| XI. | Hours - Holidays - Overtime | 21 |
| XII. | Wages | 22 |
| XIII. | Hardship and Advisory Committee & Grievance Procedure | 27 |
| XIV. | No Strike - No Lockout | 33 |
| XV. | Validity | 37 |
| XVI. | Fringe Benefit Funds | 37 |
| XVII. | Bonding | 38 |
| XVIII. | Miscellaneous Conditions | 48 |
| XIX. | Promotional Fund | 50 |
| XX. | Expiration Clause | 59 |
| XXI. | Retroactivity | 61 |
| XXII. | Effectuating Clause | 62 |
|  |  | 63 |

**AGREEMENT** made and entered into this 1st day of July 2001 and effective as of July 1, 2001, between:

**THE ASSOCIATION OF WALL-CEILING & CARPENTRY
INDUSTRIES OF NEW YORK, INCORPORATED
ON BEHALF OF ITS MEMBERS' FIRMS
HEREIN REFERRED TO AS
(THE "TRADE ASSOCIATION" and/or THE "EMPLOYER")**

and the

**DISTRICT COUNCIL OF NEW YORK CITY AND
VICINITY OF THE UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA
HEREIN REFERRED TO AS
(THE "UNION" and/or THE "DISTRICT COUNCIL")**

## ARTICLE I

### Objectives

This Agreement is entered into to prevent strikes and lockouts, to promote labor peace and facilitate the peaceful adjustment of grievances and disputes between the Employer and the Union and its members; to prevent waste, unnecessary and avoidable delays, to the Employer of cost and expense and to the employees covered hereby. To enable the Employer to secure at all times sufficient forces of skilled workmen to provide as far as possible for the continuous employment of labor; to provide that employment hereunder shall be in accordance with conditions and at wages and fringe benefits herein agreed upon, and by reason of this agreement and the purposes and intent thereof, to bring about stable conditions in the industry, keep costs of work in the industry as

low as possible, consistent with fair wages and fringe benefits and proper working conditions, as provided for hereunder.

## ARTICLE II

### Association Authorization

The parties acknowledge that the Trade Association, party to this Agreement, has provided the Union with a list of its members who have designated the Trade Association as its bargaining agent, and who has agreed to be bound by the terms and conditions of this collective bargaining agreement prior to the commencement of the negotiations which have resulted in this Agreement. The Trade Association acknowledges its representative status of its Employer members and any service on the Association shall constitute service on its Employer-members. All Employer-members who have given their assent to be bound to this agreement shall be bound during its entire term. New Employer-members shall become bound by this Agreement upon written request to the Union by the Trade Association unless said request is rejected by the Union in writing within fifteen (15) days of the date of receipt of said request by the Union.

2

# ARTICLE III

## Jurisdiction

**Section 1.** As used in this agreement, the words CARPENTER FOREMAN, CARPENTER GENERAL FOREMAN, JOURNEYMAN, CARPENTER, JOURNEYMEN CARPENTERS, and JOURNEYMEN CARPENTER APPRENTICES, are understood to include all employees performing jobs referred to in **Section 2** below.

**Section 2.** The Employer is desirous of employing Carpenters, Carpenter Apprentices, Hod Hoist Carpenters, Joiners, Millwrights, Pile Drivers, Dockbuilders, Divers, Cabinet Makers, Bench Hands, Stair Builders, Millmen, Wood and Resilient Floor Layers and Finishers, Carpet layers, Shinglers, Siders, Insulators, Acoustic and Dry Wall Applicators, Casket and Coffin Makers, and all those engaged in the operation of wood-working or other machinery required in the fashioning, milling or manufacturing of products used in the trade, or engaged as helpers to any of the above divisions or sub-divisions, and the handling, erecting and installing materials. Burning, welding, rigging and the use of any and all instruments or tools for layout work incidental to the trade on any of the divisions or sub-divisions of the trade consistent with the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America.

(a) DRYWALL: All work in connection with the installation,

3

erection and/or application of all materials and component parts of walls and partitions regardless of their material composition, purpose or method or manner of their installation attachment or connection, including but not limited to: all floor and ceiling runners, studs, stiffeners, cross bracing, fire-blocking resilient channels, furring channels, doors and windows including frames, casing, molding, base, accessory trim items, gypsum drywall materials, laminated gypsum systems backing board, finish board, fire-proofing of beams and columns, fire-proofing of chase, sound and thermal insulation materials, fixture attachments, including all layout work, preparation of all openings for lighting, air vents or other purposes and all other necessary or related work in connection therewith.

All work in connection with the installation and erection of all gypsum wallboard to receive a veneer coat of plaster or lath to receive traditional plaster if such materials are to be secured to nailable or screwable metal studs.

(b) ACOUSTICAL CEILING SYSTEMS - Six (6) General Types:

1. Direct hung suspension system.

2. Attached concealed system without backing board.

3. Furring bar attached system.

4. Furring bar suspension system.

5. Indirect hung suspension system.

4

6.  Metal ceilings, in accordance with the International Agreement of April 1, 1978 between Sheet Metal Workers International Association and United Brotherhood of Carpenters and Joiners of America.

Metal Trim, Interviewers, Door Knockers and Mechanical Chimes, Constructing and securing of all boxes, wood and/or Metal Floor and Wall Penetrations in Reinforced Concrete Construction; Pre-fabricated Tile Panels, Fiberglass, Compositions, and/or any other Wood substitute material; Wood and Metal Store Fronts, Building Entrances, Elevator Entrances, etc.; fabricate and install all pre-cast and pre-stressed concrete members used in all types of Building Construction; Fabricate and install Partitions (including landscape modular partitions), Dividers and Sliding Doors, constructed of Wood, Metal, Plastic, Composition and/or any other substitute material; Fabricate and install all Kalamein Work and Hollow Metal Work.

(c) The term "CARPENTER" and the term "JOINER" are synonymous, and in either case shall mean one who pre-fabs or constructs forms for footings or foundations of housing, buildings, structures of all descriptions, whether made of wood, metal, wire mesh, plastic or any other type of material, the erecting of structural part of a house, building, or structure made of wood or any substitute such as plastics, metal or composition material, who

5

puts together roofs, partitions, fabricates or erects forms for decking or other structural parts of houses, buildings, or any structure, and dismantling of all forms. The fabrication, erecting and dismantling of all falsework, where power is used for the setting or dismantling of forms or any other material erected by Carpenters. All handling and signaling shall be done by Carpenters. The fabrication and/or setting of all templates including anchor bolts necessary for structural members or machinery and the placing and/or leveling of these bolts is included. All shanties shall be assembled by Carpenters on the job whether they are built in place or they are knockdown shanties as long as it is within that Employers power to do so.

(d)   Installing, erecting, removing and placing of building material, platforms and bucket hoisting equipment (generally known to the trade as Hod Hoists), and repairing of equipment consisting of catheads, elevators, rails and all other parts made of wood, metal or any other substitute material and any other work and jurisdiction now in the possession of the Hod Hoist Carpenters, members of Local Union 1536, which is not in conflict with any other Union affiliated with the AFL-CIO.

(e)   All work pertaining to Test Boring and Core Drilling under the jurisdiction of Local Union 1536.

(f)   All framing in connection with the setting of metal,

6

plastic, wood or other materials, pre-fab and job site fabricated, columns, the setting of all forms, centers and bulkheads, the fabrication and setting of screeds and stakes for concrete and mastic floors where the screed is notched or fitted or made up of more than one member.  The making, setting and stripping of all forms used in concrete work.

(g)  The installation of all moldings made of wood, metal, plastic composition, installing of runstrips for plumbers or other trades for cutting for pipes through floors, joists or partitions composed entirely or in part of wood, metal, plastic, pre-molded plaster or other material erected by Carpenters.

(h)  The installation of all framework partitions and trim materials for toilets and bathrooms made of wood, metal or plastics or composition materials, fastening on all wooden, plastic, metal or composition cleats to iron work or on other material; the erecting and installation of stran steel or similar material; cutting and hanging all lumber or other materials between girders and joists for fire proofing or concrete centers; setting and hanging of all sash, doors, inside and outside blinds, windows and other frames; erection or application of all wood, wood pulp, plastic, plaster transite or composition materials or any combination of any of the above with any material including laminates of, or faced with metal regardless of the manner

7

attached.

(i)  Cutting and applying of all furring; bridging, making and fastening of wood brackets or replacement materials for metal ceilings and side walls; erecting of all wood and metal furring for cornices and putting on all grounds for plaster and cement finish. The building and constructing of all derricks; the making of mortar boards, boxes and trestles, putting in needle uprights, all shoring of buildings, raising and moving buildings.

(j)  The building, erecting and dismantling of scaffolding and staging; all free-standing scaffolds shall be in accordance with the Decision of Record on Scaffolds rendered on April 28, 1920.

(k)  Fitting, installing and fastening of stops, beads and moldings in doors and windows; framing of all false work, derricks and hoists, travelers and all other lumber or material used in the building and construction industry; putting on all hardware; putting up of interior and exterior trim or finish of wood.  The hanging, setting and installation of wood, metal, plastic or any other wood substitute material; all types of doors, sash, jambs, bucks, casings, moldings, chair rails, mantels, base or mop board; wainscoting, furniture, china closets, kitchen cabinets, wardrobes, and installation of bowling alleys.

(l)  The manufacturing and erecting of cooling towers and roof tanks.  The installation of wood, plastic, or metal awnings, door

8

shelters, marquees and jalousies. The laying and finishing of all floors including wood, cork, asphalt, linoleum, vinyl, rubber or any other type of resilient floor or wall covering. The installation of rugs, carpets, draperies and curtains. The application of acoustic tile whether glued or nailed; acoustical suspended ceilings in its entirety.

(m)  Building and erecting stairs, store, office, bank and other fixtures, shelving, racks whether of wood or other material; making and fitting of screens, putting on weather strips and caulking. The installation of laboratory equipment including cabinets and wood benches, book cases and cabinets, either separately or used in conjunction with heating and/or air-conditioning units, blackboards, bulletin boards, meter-boards, electrical boards and boards of all types.

(n)  Manufacture of and erection of walk-in refrigeration boxes and all work in connection thereof shall be the work of the Carpenter.

(o)  The installation of insulation material of all types, whether blown, nailed, or attached in other ways to walls, ceilings, and floors of new and existing buildings, shall be the work of the Carpenter.

(p)  The handling of lumber, fixtures, trim or other materials erected by Carpenters. The erection of porcelain enameled panels

9

and all corrugated, or flat wood, plastic, metal, or composition roofing and siding. The assembling and setting of all seats in theaters, halls, churches, schools, banks, stadiums, and open-air theaters, and other buildings; installing of wood, metal and plastic corner beads; erecting mortar and brick hoists and concrete distributors used in erecting buildings or fire proofing floors, or for pouring concrete buildings, building and repairing coal pockets, breakers, washers, tipples; setting of forms for sidewalk, sidewalk lights, curb and gutters, all welding and burning incidental to carpentry.

(q) The operation of winches and jacks whether operated manually or operated mechanically by portable operating devices, used to handle material to be installed or erected by members of the United Brotherhood of Carpenters and Joiners of America and all tagging and signaling incidental to the trade.

Ribs required for centers may be cut in the shop, but all other parts for centers shall be cut on the job and all centers shall be assembled on the job. All concrete form work shall be under the supervision of the Carpenter Foreman.

(r) Stripping of all concrete forms, stripping of all columns, beam sides and beam bottoms, wall and footing forms of all types and construction, and, the stripping of all concrete forms on building construction, shall be performed with an equal number of

10

Carpenters and laborers under the supervision of the Carpenter Foreman.

(s) All layout work necessary to the Trade, and the use of any Level, Transit, Laser Beam, or any Optical Instrument required by the Carpenter for the completion of job or project.

(t) All protection work under the Carpenters' jurisdiction on any building, heavy construction, asbestos, lead, or other hazardous abatement or alterations, must be performed by Carpenters employed by the General Contractor, Prime Contractor, Builder or Sub-Contractor so assigned by the General Contractor, Prime Contractor or Builder.

(u) The setting of all curbing inside the property line. The installation of hardware for draperies and blinds. The installation of wood and metal windows.

(v) No work normally built by Carpenters on the job will be fabricated off the job with anyone other than Union Carpenters being paid the rate of wages and benefits provided herein.

Section 3. The Employer agrees to recognize the jurisdictional claims of the United Brotherhood of Carpenters and Joiners of America that have been established in its Constitution and Laws of the United Brotherhood and further agrees to assign all work to Carpenters in accordance with the aforesaid jurisdictional claims, and subject to existing practices in the industry.

11

**Section 4.** The handling, unpacking, distributing and hoisting of materials to be installed and/or erected by employees covered by the Agreement shall be done by Carpenters.

**Section 5.** No Contractor, General Contractor, or Owner-Builder who is bound by this Agreement will sublet to another Contractor, on a lump-sum basis, the safety protection of openings and stairways. This includes the planking or other protection of openings in concrete arches during the form stage work. This does not include the subletting of sidewalk bridge construction or maintenance.

All perimeter protection work including construction and maintenance of horizontal and vertical safety nets in its entirety shall be the work of the Carpenter.

Nothing in this Agreement will forbid the Contractor having an agreement with the District Council of New York City and Vicinity from hiring on his payroll on a temporary basis, Carpenters who may be performing work for other Contractors on the same jobsite, or to perform protection work on time-and-material basis.

**Section 6.** When the Employer desires to engage in Millwright work within the jurisdiction of Millwright and Machinery Erectors Local Union 740, then it shall be governed by the appropriate agreement, signed between the District Council and the Association of the Employer engaged in such work.

12

**Section 7.** When the Employer desires to engage in work within the jurisdiction of Dockbuilders, Pier Carpenters, Shorers, House Movers, Pile Drivers, Divers, Tenders and Foundation and Marine Constructors, Local Union No. 1456 of Greater New York, New Jersey and Vicinity, then it shall be governed by the appropriate agreement, signed between the District Council and the Association of Employers engaged in such work.

**Section 8.** When the Employer desires to engage in work within the jurisdiction of Timberman, Hod Hoist Carpenters, Core Drillers Local Union 1536, then it shall be governed by the appropriate agreement, signed between the District Council and the Association of Employer engaged in such work.

**Section 9.** When the Employer desires to engage in resilient floor covering work, within the jurisdiction of Local Union 2287 then it shall be governed by the appropriate agreement, signed between the District Council and the Association of Employers engaged in such work.

**Section 10.** When the Employer desires to engage in manufacturing custom fixtures and mill-cabinet products, within the jurisdiction of Local 2090, then it shall be governed by the appropriate agreement signed between the District Council and the Association of Employers engaged in such work.

13

## ARTICLE IV

## Union Recognition

**Section 1.** The "Principles" listed in this **Article** are intended for the general betterment of the Construction Industry and especially as affecting the parties of this Agreement. If, in their enforcement, any confusion or misunderstanding arises as to their meaning or interpretation, such differences shall be settled as provided for in **Article XIII** of this Agreement.

**Section 2.** The Employers recognize the Union as the exclusive bargaining representative for all the employees referred to in **Article III** above.

**Section 3.** No person representing the Union, except its Business Manager, Business Representatives, Assistant Business Representatives, Executive Officers, Assistants to the President, and on-site Job Steward, shall have the right to interview the workmen during business hours. These Union Representatives shall comply with all general conditions of the job regarding passes, entrance to be used, etc.

## ARTICLE V

## Union Security

**Section 1.** All employees who are members of the Union at the time of signing of this Agreement shall continue membership in the

14

Union. All other employees must become members of the Union within seven (7) days following the beginning of employment or the effective date of this Agreement, whichever is later, and must maintain their membership in good standing in the Union as a condition of continued employment. If the provisions for Union Security clauses are modified by Congress during the terms of this Agreement, this clause will automatically become modified to conform to such changes.

**Section 2.** Maintenance of Union membership shall be evidenced by the current working card which shall indicate the current dues have been paid to the Union.

**Section 3.** All employees covered by this Agreement shall have the privilege of working for whomever they see fit, in accordance with the terms of this Agreement, and the Employer is to be at liberty to employ or discharge whomsoever it sees fit, subject to the terms of this Agreement.

**Section 4.** Employees covered by this Agreement shall not refuse to work with persons who, after seven (7) days' employment, have complied with the Union Security provisions of this Agreement. However, employees covered by this Agreement are not required to work with persons who do not comply with the Union Security provisions of this Agreement. It is understood that additional mechanics secured by the Employer shall be eligible for and shall

15

comply with requirements of Union membership set forth herein.


## ARTICLE VI

### General Foreman - Foreman

### Hiring Schedule

**Section 1.** The General Foreman and Foreman shall be the agents of the Employer. The right to hire and discharge employees rests with the authorized representatives of the Employer. If the Union prefers charges against the General Foreman or Foreman as such, they shall file a copy of such charges against them with the Trade Board one week preceding the hearing on the charges.

**Section 2.** The first Carpenter on the jobsite shall be referred by the Union. The second Carpenter shall be the Employer's selection. The balance shall be 50% from the Union and 50% from the Employer. The Union will cooperate, in order to meet all legal requirements, and furnish qualified Carpenters. A working Job Steward on each shift shall be appointed by the Union.

l jobs regardless of what type of agreement they work under shall have a New York District Council of Carpenters certified Shop Steward. All New York City District Council certified Shop Stewards shall be given time to deliver his or her Shop Steward reports for that work week to the Union hall in the jurisdiction area they are working in and the time must be agreed between the

16

Employer and the Steward. When a signatory Employer wishes to layoff a Shop Steward during a continuous employment, the Employer must notify the Union and have a meeting on the job with the Union within twenty-four (24) hours. If termination takes place, a letter must be sent to the Union.

(a) Not withstanding the provisions of **Section 2** of this **Article**, upon completion of projects by the signatory Employer, the Employer, with prior notice to the Local Union, may employ one Carpenter on the project for up to three (3) days to perform "punch list" work.

(b) When four (4) or more Carpenters are employed, one (1) shall be the Foreman. The Employer at its sole discretion, may designate a second foreman, who, shall be from the local Union in which geographical jurisdiction the job is located. When five (5) or more Carpenter Foremen are employed, there will be one (1) General Foreman designated by the Employer.

(c) Nothing in this Section shall restrict an Employer's right to discharge any Carpenter for good cause. If the person so discharged was obtained from the District Council, the replacement must be obtained from the same source in order to maintain the fifty-fifty ratio of employment.

(d) When an Employer requests the Local Union to send members to a job, the Local Union shall send employees experienced in the

17

specific type of carpentry work being done on the said job by that Employer. If the Local Union is unable to supply suitable personnel, the District Council shall do so.

(e) The apprentice ratio within this collective bargaining agreement shall be two (2) apprentices to every five (5) journeyman and one of those apprentices must be a third or fourth year apprentice referred from the out-of-work list by the District Council.

(f) All apprentices must work a minimum of 50 % of a work week on the tools with journeyman while employed on a regular basis.

## ARTICLE VII

### Job Referral System

### Non Discrimination Clause

Section 1. The Union shall establish and maintain an open employment list for the employment of qualified and competent workers.

Section 2. The parties agree that there shall be no discrimination in the employment, hiring or training of employees in the bargaining unit on the basis of race, creed, color, sex, national origin, age, disability, marital status, citizenship status, sexual orientation or affectual preference in all

18

employment decisions, or Union activity as defined in applicable federal, state, or local laws. For the purposes of this **Article,** "citizenship status" means the citizenship of any person, or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

**Section 3.** Applicants for referral through the Union must register with the Union. Applicants who have successfully completed the full Apprenticeship Program shall be presumed to have the necessary skill and experience. Whether other applicants possess the necessary skill shall be determined by the Employer, subject to appeal, pursuant to **Article XIII** of this Agreement.

**Section 4.** In selecting applicants from the referral list, the Union shall use the following criteria:

(a) Carpenters will be hired by the job referral list at the District Council. The 50/50 rule will be enforced and the Employer can hire whom he wants on his 50% ratio. The other 50% will come from the job referral list and all requests will be honored from the job referral list, providing those Carpenters requested are members of the New York City District Council. All requests must be made for New York City District Council of Carpenters only. All Carpenters on a job site who are not members of the New York City District Council of Carpenters will be matched from the out of work referral list one for one, and requests cannot be used to match out

19

of town Carpenters.

**Section 5.** The Employer shall retain the right to reject any job applicant referred by the Union. The Employer shall notify the Union in writing the reasons for rejection. The Union shall then refer other applicants to the Employer until the required number of applicants are obtained.

## ARTICLE VIII

### Lumping Prohibited

**Section 1.** The parties hereto agree to the elimination of lumping (the subcontracting of labor without material). The Subcontractor must furnish both labor and material complete under one contract. This provision will also apply to wood flooring, however, that contracting for the installation of antique flooring or the surfacing (or resurfacing) of old floors shall not be classified as lumping.

**Section 2.** The Employer, General Contractors, Prime Contractors Builders, or Subcontractors agree that it will not subcontract any work covered under this Agreement to any one in order to circumvent the payment of wages, fringe benefits, and working conditions provided herein.

## ARTICLE IX

## Geographical Jurisdiction

This Agreement shall cover work performed by Carpenter employees within the territorial jurisdiction of the District Council of New York City and Vicinity, which is as follows:

All of the five (5) Boroughs of the City of New York, all of the Islands in and all the waters of the adjacent Harbors, Rivers and Bays, and that portion of Long Island bounded by a line beginning at the intersection of the City Line and the North Shore of Long Island, then running southerly to the Southern State Parkway, then East to Seaford Creek in Nassau County, then South to the Atlantic Ocean, then West to the Southern tip of the Borough of Richmond, then North on Arthur Kill to Kill Van Kull, then East to Upper New York Bay, then North to the North River and Hudson River, then East to New York City Line then continue East on the New York City Line to Long Island Sound, then South to the intersection of the City Line and the North Shore of Long Island, all within the State of New York.

## ARTICLE X

## Joint Venture

**Section 1.** The Employer stipulates that any of its subsidiaries or joint ventures to which they may be party when such

21

subsidiaries or joint ventures engage in building construction work, shall be bound by the terms of this Agreement.

**Section 2.** When Employers enters into a joint venture with an Employer who is not bound by this Agreement, then said joint ventures must either be bound through their respective Trade Associations, or it must sign an agreement with the District Council of New York City before it can employ any of its members.

**Section 3.** This Agreement shall be binding on the Employer, its successors and/or assigns, as well as any firm, be it corporation, partnership or joint venture which the Employer, in which its successors or assigns has or acquires a financial interest.

## ARTICLE XI

## Hours - Holidays - Overtime

**Section 1.** The intent is to maintain the seven hour work day, thirty five hour work week. During the term of this Agreement the work day may be increased to eight hours at straight time pay hours and a forty hour work week with written notification to the District Council prior to commencement of job and must continue for the duration of the job. Overtime hours Monday through Friday shall be paid at time and one-half. Saturday pay shall be at the time and one-half rate. The Contractor is expected to establish

22

and maintain a reasonable work week schedule allowing for unusual jobsite conditions. Other than an emergency, notice of all overtime work should be given to the Carpenters before noon if possible. Carpenters will never be penalized for refusing to work overtime.

**Section 2. Flexible Starting Time:** The normal work day shall start at eight (8) a.m. and may be changed by the Employer due to work site conditions to start between seven (7) a.m. and nine (9) a.m. for all or a portion of the employees. When the start time is changed, notification will be given by the Employer to the Union. No Carpenter is to start work before the designated starting time.

**Section 3. Shift Work:** The Employer may work two shifts with the first shift working 8:00 a.m. to the end of the shift at straight time rate of pay. The second shift will receive one hour at double time rate for the last hour of the shift (eight for seven, nine for eight). In addition, members of the second shift shall be allowed one-half (½) hour to eat, with this time being included in the hours of work established. There must be a first shift to work the second shift. All additional hours worked shall be paid at the time and one-half rate. The Employer shall notify the Union before beginning the shift schedule. On shift work, the Job Steward shall work no more than the shift hours. There shall be a Job Steward on each shift who shall be appointed by the Union.

23

There shall be a pre-job conference with the Union before the commencement of any shift work.

**Section 4. Off-hour Work on Alteration and Repair Work:** When performing alteration or repair work in an occupied building and when it is not possible to perform said work during regular working hours, said work shall proceed during off hours, as scheduled by the Employer, but starting no later than 8:30 p.m. The work day and rate of pay shall be the same as the second shift provisions. In addition, members of the off-hour crew shall be allowed one-half (½) hour to eat, with this time being included in the established shift hours. Hours worked in excess of the established shift hours shall be paid at the appropriate overtime rate. The Employer shall notify the Union before beginning said off-hour work. There shall be a pre-job conference with the Union before the commencement of off-hour work.

**Section 5.** The Contractor may start a portion of the crew one hour prior to the established start time at straight time wages due to unusual job site conditions. The Contractor will determine the number of employees necessary. The working Steward will be part of the early crew. It is understood this is not intended to establish a continuous staggered work week.

**Section 6. Saturday Make-up:** When conditions beyond the control of the Employer, such as severe weather, widespread power

24

failure, fire, natural disaster, etc., prevent the operation of the job on one or more normal working days, the Employer may, after notifying the Union, schedule the Saturday of that calendar week during which work was prevented, as a make-up day at straight time. All hours worked in excess of the established work day schedule shall be paid for at the rate of time and one half. When a holiday falls on a Saturday, then the make-up day rate shall be double time.   In order to utilize a Saturday as a make-up day, the Employer must declare a regular work day "terminated", for one of the reasons listed above, no later than 10:00 a.m. of the day terminated, and must notify the Union of its desire to work a make-up day by noon of the day preceding the make-up day. Employees employed by the Employer on the day so "terminated", shall have the right of first refusal to work on the make-up Saturday, but said employees shall also have the right to decline work on a make-up Saturday, without any penalty.  If men are needed to work a make-up Saturday, other than those already working on the job, the Employer shall call the Union for men before employing men secured from any other source.  A make-up Saturday shall be no less than a seven (7) hour day or as established by the shift, with one-half (½) hour off to eat, charged to the hours worked.

**Section 7.**  It is further agreed that no work shall be performed on Sundays or Legal Holidays, except in the case of

emergency or necessity, and that no work shall be performed then unless notification is given to the District Council on the previous workday, stating shop or building where work is to be performed and the number of men required. **DOUBLE TIME SHALL BE PAID FOR ALL WORK ON SUNDAY AND LEGAL HOLIDAYS UNLESS OTHERWISE NOTED.**

Emergency work, INVOLVING DANGER TO LIFE AND PROPERTY, may be performed without permission from the District Council.

**Section 8.** The Legal Holidays referred to herein are: New Year's Day, Presidents Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Election Day (only in Presidential Year), Thanksgiving Day, day after Thanksgiving and Christmas Day. These are to be non-paid Holidays except for the General Foreman, Foreman and First and Second Year Apprentices who shall be paid on a weekly basis.

**Section 9.** In all cases, the Holidays referred to in the previous **section** shall be observed on the day and date established for the State of New York. When work is performed on such Legal Holidays, double time shall be paid.

**Section 10.** Employees employed on the last legal working day before Christmas Day and before New Year's Day and who report to work on such days, shall receive three (3) hours' afternoon pay without working. Work performed on the afternoons of said days

26

shall be paid at the double-time rate only. Fringe Benefit Contributions will be payable on the half-holidays referred to above.

Section 11. When a Legal Holiday, defined in Section 8, falls on a Sunday and the following day is declared a Legal Holiday, then double-time shall be paid for all hours worked.

Section 12. No work shall be performed on Labor Day.

## ARTICLE XII

### Wages

Section 1. The Employer agrees that it will hire all employees covered by this Agreement for wages and hours not less than those specified herein.

Section 2. Wages shall be paid weekly on the job before 3:30 p.m. or 4:00 p.m. on Friday, said wages to be paid at the Employer's option either in cash in envelopes, upon the outside of which shall be plainly marked the Employer's name, the persons name and number, Social Security number, the hours worked, and the amount of money enclosed, or by check, provided:

(a) The check is a Todd Insured A.B.C. System Payroll check, or similar type of check, containing above information as on the pay envelope, and that delivery of the checks to the person shall be made at least on the day preceding a banking day.

27

(b)   Any deductions from wages now or hereafter required by law shall also be marked on the face of pay envelopes.   If Carpenters are not paid as specified above, double-time shall be paid for Friday between the hours of 3:30 p.m. or 4:00 p.m. and 5:30 p.m. or 6:00 p.m., and single-time for working time thereafter, until paid, not exceeding fourteen (14) hours; provided, however, that the men report to and remain on the job during the said fourteen (14) hours.

**Section 3.**  Employees covered by this Agreement shall be given one (1) hour's notice before being discharged or laid off, and in either event his or her wages and benefits must be paid in full at that time.  If the Employer through no fault of his own cannot have the benefits there at that time, he or she will be allowed a twenty-four (24) hour grace period to overnight the benefits to the members home or Local Union.  The wages shall be paid in cash or by insured check, under the conditions set forth in **Section 2** of this **Article.**  This does not apply to any temporary suspension of work during any pay week of reasons beyond the control of Employer.

All employees, at the termination of their employment, shall receive the New York State Record of Employment Form 1-A within twenty-four (24) hours of their dismissal.

**Section 4.**  When the Employer is working under conditions in **Article XI**, then the payment of wages shall conform to this

28

**Article**, except that the hours indicated will change accordingly.

Section 5. This Agreement is based on the principle that the Employer is entitled to seven (7) hours' actual work for seven (7) hours' pay. Any unreasonable failure to work these hours gives the Employer the right to pay only for the hours actually worked.

Section 6. Except at the start and finish of a job, General Foreman, Foreman, and First and Second Year Apprentices shall be employed on a weekly basis which shall include wages and fringe benefits. The payment of overtime rates for the General Foreman and Foreman shall be made at the minimum book rate for General Foreman and Foreman when there are Carpenters doing work on the jobsite. If the General Foreman and Foreman are receiving a rate higher than the minimum book rate, it will be the Employer's option as to whether the General Foreman and Foreman shall receive the higher agreed rate for said overtime.

Section 7. When employees are referred to a job and report for work, and no work is provided, they shall receive two (2) hours' pay, except for inclement weather or other conditions beyond the control of the Employer. All employees reporting for work and ready to start at 8:00 a.m., shall receive two (2) hours' show-up time, if the job does not start, except for inclement weather or other conditions beyond the control of the Employer.

29

**Section 8. Wages - Wage rates and fringe benefit contribution within the bargaining unit shall be determined and/or reallocate by Union at its sole discretion:**

**TOTAL WAGES & FRINGE BENEFITS - JOURNEYMAN CARPENTER**

|                        | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|------------------------|----------|----------|----------|----------|
| Total package per hr.  | $57.48   | $58.89   | $60.58   | $62.27   |

|                        | 07/01/03 | 07/01/04 | 07/01/05 |
|------------------------|----------|----------|----------|
| Total package per hr.  | $65.09   | $67.91   | $70.87   |

**FOREMAN -            $3.00 PER HR. ABOVE JOURNEYMAN SCALE**
**GENERAL FOREMAN -    $6.00 PER HR. ABOVE JOURNEYMAN SCALE**

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|------------------|----------|----------|----------|----------|
| Journeyman       | $33.68   | -----    | -----    | -----    |
| Foreman          | $36.68   | -----    | -----    | -----    |
| General Foreman  | $39.68   | -----    | -----    | -----    |

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/03 | 07/01/04 | 07/01/05 |
|------------------|----------|----------|----------|
| Journeyman       | $----    | -----    | -----    |
| Foreman          | $----    | -----    | -----    |
| General Foreman  | $----    | -----    | -----    |

**APPRENTICES**

Apprentice wage increases may be deferred for reasons determined by the Joint Apprentice Committee and or it's Training Director by written notice to the Employer.

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|------------------------------|----------|----------|----------|----------|
| 1st yr. Apprentice 40%       | $13.47   | -----    | -----    | -----    |
| 2nd yr. Apprentice 50%       | $16.84   | -----    | -----    | -----    |
| 3rd yr. Apprentice 65%       | $21.89   | -----    | -----    | -----    |
| 4th yr. Apprentice 80%       | $26.94   | -----    | -----    | -----    |

30

**EFFECTIVE DATES**
**WAGE RATE PER HOUR**

| | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| 1st yr. Apprentice 40% | $----- | ----- | ----- |
| 2nd yr. Apprentice 50% | $----- | ----- | ----- |
| 3rd yr. Apprentice 65% | $----- | ----- | ----- |
| 4th yr. Apprentice 80% | $----- | ----- | ----- |

**FRINGE BENEFIT RATE PER HOUR**
**JOURNEYMAN-FOREMAN-GENERAL FOREMAN**

**EFFECTIVE DATES**

| | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | ----- | ----- | ----- |
| PENSION | $ 5.41 | ----- | ----- | ----- |
| ANNUITY | $ 4.70 | ----- | ----- | ----- |
| A.J.R.E.I.F. | $ 0.29 | ----- | ----- | ----- |
| VACATION | $ 4.40 | ----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | ----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | ----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | ----- | ----- | ----- |
| TOTAL PER HOUR | $23.80 | ----- | ----- | ----- |

**EFFECTIVE DATES**

| | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

31

FRINGE BENEFIT RATE PER HOUR
1st 2nd 3rd & 4th YEAR APPRENTICES

| EFFECTIVE DATES | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | ----- | ----- | ----- |
| PENSION | $ 2.71 | ----- | ----- | ----- |
| ANNUITY | $ 2.35 | ----- | ----- | ----- |
| A.J.R.E.I.F. | $ 0.29 | ----- | ----- | ----- |
| VACATION | $ 2.20 | ----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | ----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | ----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | ----- | ----- | ----- |
| TOTAL PER HOUR | $16.55 | ----- | ----- | ----- |

| EFFECTIVE DATES | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

The Pension, Vacation and Annuity Fund contribution rates for Apprentices are based upon 50% of the Journeyman rate.

**Section 9.** When an employee is required to work through the lunch period, he shall be compensated at the rate of time and one-half, and be given time to eat his lunch.

**Section 10.** There shall be no lost time in wages to any employee on the day of injury when immediate medical attention is required to said employee, while working on the Employer's job, provided the employee submits a note from the doctor or clinic,

32

stating that the employee cannot work that day.

Section 11.   No Carpenter shall be sent out on any given day for less than one (1) day's work.

Section 12.   All First and Second Year Apprentices and New York Plan Trainees must be available for work every day of the payroll week or they will not be paid for work not performed.

## ARTICLE XIII

### Hardship and Advisory Committee
### &
### Grievance Procedure

Section 1. The Committee is to replace the "Trade Board" as established in this Section and assume all it's duties. In addition the new Committee will have authority to address, in a timely fashion, any undue hardships the collective bargaining agreement may impose on the Union, a Contractor or the Association on an issue by issue basis.

(a) The Committee may modify terms and conditions to allow the Association Contractor to manage it's particular project or to compete against unfair Contractors on a site by site basis.

(b) All issues the Hardship and Advisory Committee reviews will be in writing and its actions will be decided by a simple majority. All concerns brought before the Committee will be reviewed, periodically. Repetitious issues can be recommended for

33

inclusion in a subsequent bargaining agreement.

(c) The Committee will meet, upon written request, by the Association or the Union within three working days. Such request, by fax or letter, shall state the project location, local Union, Contractor, Sub-contractor and brief summary of the question to be discussed.

**Section 2.** All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation.

**Section 3.** In the event said dispute, claim, demand or controversy shall not be completely settled and adjusted, the parties agree that it shall be referred for resolution by the Hardship and Advisory Committee of the Association and the Union.

(a) Said Board shall consist of three (3) members to represent the Association and three (3) members to represent the Union. The Board shall meet within 72 hours, unless time extended by mutual agreement, after a written request by either the Employer or the Union. Each member shall cast one vote. Two members representing the Employer and two members representing the Union shall constitute a quorum. Any member of the Trade Board

34

directly involved in the dispute may be challenged by any two members of the Board and shall be replaced by the Trade Association or the Union, as the case may be.

(b)   The Committee's Final Decision shall be by majority of the votes cast and shall be final and binding on both parties.  The Trade Board shall have the power and authority to fashion such remedy, including the imposition of damages, as it deems appropriate.

**Section 4.**  Any grievance not resolved shall be submitted to arbitration before Roger Maher, Robert Silagi, Joseph W. Lipowski or Robert Herzog who shall serve as the permanent contract arbitrator(s) hereunder.

(a)   The arbitrator shall conduct a hearing in such a manner as he shall consider proper and shall serve as sole arbitrator of the dispute between the parties.  The arbitrator shall have the right to conduct an ex-parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision based on the testimony before him at such hearing.

(b)   The decision of the arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgment in the Supreme Court of the State of New York or in a court of appropriate jurisdiction in any state where such decision shall be

35

rendered. The costs of the arbitration, including the arbitrator's fee shall be borne equally by the Employer and the Union.

(c) It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted.

(d) Service of any documents or notice referred to above, or service of any notice required by law in connection with arbitration proceedings may be made by registered or certified mail. Service upon the Employer may be made on either the individual Employer or the Trade Association. A post office receipt shall be conclusive evidence of proper service if mailed to the address designated by the Employer when it signed the Agreement. If certified mail is refused or not picked up ordinary mail shall then be deemed sufficient service provided that it is forwarded to the address of record contained in this Agreement.

(e) Upon the confirmation of the arbitrator's award, or on appeal therefrom, the prevailing party shall be entitled to receive all court costs in each proceeding as well as reasonable attorneys fees.

## ARTICLE XIV

## No Strike - No Lockout

The Union or its representatives shall not order a strike or stoppage of work, nor shall the employees strike against any Employer, or collectively leave the work of an Employer, for any reason including jurisdictional dispute, nor shall any Employer lock out employees prior to filing a complaint, grievance or pending the adjustment of any existing dispute, as provided for in **Article XIII**.

The Union may call or sanction a strike for (1) the Employer's refusal to submit a matter to arbitration, pursuant to the arbitration clause of this Agreement; or (2) the Employer's failure to comply with any decision of any Board of Arbitration established hereunder within five (5) working days after such decision; or (3) any other reason explicitly provided for in this Agreement.

## ARTICLE XV

## Validity

If a Court of competent jurisdiction should decide that any clause or part of this Agreement is unconstitutional or illegal, or should any clause or part of this Agreement be found contrary to present or future laws, it shall not invalidate the other portions

37

of this Agreement, it being the sole intent and purpose of this Agreement to promote peace and harmony in the Industry as permitted by Law.

## ARTICLE XVI

### Fringe Benefit Funds

**Section 1.**   Every Employer covered by this Agreement shall make contributions for each hour worked of all employees covered by this Agreement and employed by said Employer within the territory of this Agreement in the amounts hereinafter specified to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, United Brotherhood of Carpenters and Joiners of America Fund, and Apprenticeship, Journeymen Retraining, Education, and Industry Fund and Supplemental Funds of the District Council and New York City and Vicinity Carpenters Labor-Management Fund.

(a)   Each Employer's books and payroll records, including cash disbursement records, shall be made available upon demand of the Trustees at all reasonable business hours. Each signatory Employer acknowledges and agrees that the failure of any Employer to make the required fringe benefit fund contributions affects the liability of all Employers to this Agreement and decreases the benefits available to the Carpenter employees of this Employer. Therefore, each Employer signatory to this Agreement shall make

38

available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representatives, all pertinent books and records, including all cash disbursement records, required for an audit to enable said auditor to ascertain and independently verify that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary by the Trustees in connection with the proper administration of their fiduciary responsibilities. In order to accomplish this end, it is specifically agreed that should any affiliate or subsidiary Employer as described in this Agreement be involved with the business activities of this Employer. The Employer will make available all the pertinent books and payroll records of such affiliate or subsidiary to the auditor so that a complete audit can be conducted. The extent of the audit and the determination as to what pertinent records are necessary to complete the audit is in the sole discretion of the Employer/Union Trustees so that they may independently verify that all required contributions have been made and to discover the identity of all beneficiaries under the plans for which they have been entrusted for their proper administration.

(b) When auditors are sent to audit the books of any Employer, General Contractor, Prime Contractor, Builder or Subcontractor and a definite appointment is scheduled, when the

auditor or auditors cannot start at the appointed time and date, and must return, or when valid payroll records are not furnished, then the said Employer, General Contractor, Prime Contractor, Builder or Subcontractor shall be penalized and pay the sum of $100.00 per auditor, to cover the expense of the auditor or auditors. It shall be a violation of this Agreement, to fail to furnish proper records when requested, for the purpose of completing an audit.

(c) If the Employer, General Contractor, Prime Contractor, Owner-Builder, or Subcontractor, Bound by this Agreement refuses to submit its books and records to an Audit, the Union, within its sole discretion, may remove all its members from the offending Contractor upon twenty-four (24) hours' notice. If such men who are removed remain on the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) working days' pay.

**Section 2.** Contributions to the New York City District Council of Carpenters Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship, Journeymen Retraining, Educational and Industry Fund, Supplemental Funds and The New York City & Vicinity Labor/Management Joint Cooperation Fund shall be in accordance with this Agreement. The contribution to the

40

Supplemental Funds shall be allocated in the following manner:

Carpenters Relief and Charity Fund
TWO & ONE HALF CENT ($0.025) PER HOUR

District Council Scholarship Fund
ONE-AND-ONE-HALF CENT ($0.015) PER HOUR

The purpose of the Carpenters Relief and Charity Funds is to enable the parties to make charitable donations in the name of the carpentry industry from time to time.  Said donations shall be made to duly recognized tax exempt institutions within the meaning of the Internal Revenue Code and to provide emergency assistance to bona fide victims of disaster, catastrophe and community projects for the good of the general public.  The contributions shall be included in the payment of the Fringe Benefit Stamp.  The Fund shall be administered by a minimum of two persons, one designated by the Union and the other by the Employer Associations.  They shall serve without pay and shall be bonded to the extent required by law.  All monies received by the Fund shall be deposited in a bank selected by the two administrators and shall be disbursed only by a check signed by both administrators.  At least once a year the entire balance of the Fund on hand shall be disbursed to organizations and persons who meet the qualifications set forth above.  The administrators shall keep such books or records as required by law. Once a year the administrators shall account for all monies received and disbursed.

41

(a)  The Supplemental Funds shall be established in accordance with applicable law, and any employees authorization that is required shall be secured by the Union.

(b)  It is agreed that all contributions are due and payable to the District Council Fund Office as called for in this Agreement for the other fringe benefit funds and the Employer does hereby authorize said area Fund Office to forward said contributions to the New York State Carpenters Labor-Management Fund Office in such manner as the Trustees of said fund shall reasonably require.

(c)  The parties also recognize their right to be represented on the New York State Carpenters Labor-Management Committee and by the execution of this Agreement the parties authorize the representatives of the participating Employers and Carpenter Unions to designate their respective Union and Employer Trustees hereby waiving all notice thereof and ratifying all actions taken by them within the scope of their authority.

**Section 3.**  Effective July 1, 1996, The parties to this Agreement recognize the New York City and Vicinity Carpenters Joint Labor Management Cooperation Trust Fund. The Committee will be funded by contributions paid through the Trust Funds Stamp Plan. Said contributions shall be made in accordance with all applicable Federal and State Laws pertaining thereto.

**Section 4.**  If any of the above allocations are determined to

be legally improper, then in that event said allocation may be re-allocated by the Union to a presently existing Fringe Benefit Fund, or to another fund to be established by the Union and the Employer.

**Section 5.** The Employer and the Union acknowledge that they are represented by their duly designated Trustees to administer the various Fringe Benefit Trust Funds provided for in this Agreement. Because of the various liabilities and responsibilities placed upon all parties to this Agreement, including all Contractors and Union representatives and their respectively designated Trustees, each Employer hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary obligations in order to fully protect each signatory Employer and their employee-beneficiaries under the respective fund plans.

**Section 6.** Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare and Pension Funds, as amended, and the Agreements and Declaration of Trust, creating the Vacation Fund, Annuity Fund, United Brotherhood of Carpenters and Joiners of America Fund, and Apprenticeship, Journeymen Retraining, Educational and Industry Fund, New York City & Vicinity Carpenters Labor-Management Cooperation Fund and Supplemental Funds, as amended, and by all By-Laws adopted to regulate each of said Funds. The Trustees of the Funds shall secure the approval of the Treasury

43

Department under the applicable provisions of the Internal Revenue Code and shall amend the same, if necessary, to secure such approval, so as to qualify the Employer-contributions as deductions for Federal Income Tax purposes.

Section 7. No contributions to any of the Funds as specified in this **Article** shall be required on the premium portion of wages. For the purposes of these **Sections** only, all hours worked shall be regarded as straight-time hours.

Section 8. It is further agreed, however, that contributions specified in this **Article** shall be paid on the hours represented by wages received for not working on the afternoon of the days specified in **Article XI**, **Section 10**.

Section 9. Fringe benefit contributions, including Vacation Fund payments, will be the same for the General Foreman, Foreman and Journeyman. Fringe benefit contributions for Apprentices shall be in accordance with applicable schedules in **Article XII**. In the case of Foreman, General Foreman and First and Second year Apprentices contributions shall be made to the fringe benefit funds on the basis of hours for which said employee is actually paid, regardless of whether said hours are actually worked. This provision shall not apply to bonuses, paid vacation or paid sick leave, voluntarily paid to said employees.

Section 10. Whenever the Employer is in default in payments

44

to the Funds referred to in **Article XVI** of this Agreement, and reasonable notice of such default is given to the Employer, if the payments are not made, the Union may remove its members from the work of such Employer.  If such men who are removed remain at the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

**Section 11.**  (a)   In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

(1) the unpaid contributions; plus

(2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus

(3) an amount equal to the greater of --

(a) the amount of the interest charges on the unpaid contributions as determined in (b) above, or

(b) liquidated damages of 20% of the amount of the unpaid contributions; plus

(4) reasonable attorney's fees and costs of the action;

45

and

(5) such other legal or equitable relief as the court deems appropriate.

(b)   In the event that proceedings are instituted before an arbitrator under **Section 12** of this **Article** to collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs as may be applicable under this Agreement and Declaration of Trust establishing such Fund.

**Section 12.**   Should any dispute or disagreement arise between the parties hereto, or between the Union and any signatory Employer-member, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, or the Union, as the case may be.   Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened as soon as practicable, and the arbitrator shall submit his award within twenty (20) days after the close of the hearing.

(a)   The arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion

46

an appropriate remedy pursuant to this Agreement including, but not limited to, monetary damages. The arbitrator's award in this regard shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction. The cost of the arbitration, including the fees to be paid to the arbitrator shall be included in the award and shall be borne by the losing party.

(b) Roger Macer, Joseph W. Lipowski, Robert Silagi or Robert Herzog is hereby designated as impartial arbitrator(s) hereunder.

(c) The agreement of the parties to submit said matters regarding the payment of contributions to an arbitrator does not excuse the Employer from any statutory, civil or criminal liability which may attach to his actions under Municipal, State or Federal law. The submission of a matter to arbitration is in no way meant to affect the right of the Union to remove its members from an Employer's premises, as provided for in this Agreement.

**Section 13.** A stamp plan has been established which provides for the payment of contributions to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship, Journeymen Retraining, Educational and Industry Fund, New York City Joint Labor-Management Cooperation Fund, and Supplemental Funds pursuant to a consolidated stamp, including the filing of the monthly summary report with the

47

Fund office.  The Employer will comply with procedures established by the Benefit Fund Trustees to assure that the employee receives the consolidated stamp together with his/her pay.  The stamps shall be purchased through facilities established by the Bank of New York or such other agencies authorized by the Trustees.

## ARTICLE XVII

### Bonding

**Section 1.**  An Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated member is not required to post a Surety Bond except as stated hereafter.

Any Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated Employer whose records have been audited by the Funds' and who is found to be delinquent is required to post a bond in the amount set forth in accordance with **Section 2** of this **Article**.

A new Association Employer member whose records have never been audited by the Funds' auditors, shall be required to post a bond as set forth in this **Article**.  The new Employer upon completion of an audit by the Funds' auditors, and said audit reveals no material discrepancy, shall not be required to continue to post a bond.

**Section 2.** Those Employer's covered by this Agreement who are

48

required to post a bond shall provide a Surety Bond in the following amounts:

| Number of Employees | Bond Amount |
|---|---|
| 1 - 5 | $ 5,000.00 |
| 6 - 10 | $ 10,000.00 |
| 11 - 15 | $ 15,000.00 |
| 16 - 25 | $ 25,000.00 |
| 26 - 50 | $ 50,000.00 |
| over 50 | $100,000.00 |

The above bonding requirements shall remain in full force and effect for the duration of this Agreement.

(a) When a signatory Association Employer is required to post a bond and owes to the Benefit Funds an amount greater than the face amount of his Surety Bond, the Surety Bond must be increased to cover such indebtedness. If this cannot be done, the Union may remove all members of the bargaining unit from that Employer.

**Section 3.** The District Council, in its discretion, may suspend the requirement for a signatory Association Employer under this agreement to maintain the bond provided for in this **Article,** provided the District Council is satisfied that the said Association Employer is not presently delinquent in payment of fringe benefit contributions and has a favorable history of making fringe benefit contributions on a timely basis. In the event that the District Council gives an unfavorable response to the request of the signatory Association Employer to suspend such bond requirement, the Association Employer shall have the right to

49

appear before the Board of Trustees from the Fringe Benefit Funds to review its application for suspension of this bonding requirement.

## ARTICLE XVIII

## Miscellaneous Conditions

**Section 1.** The Employer agrees that this Agreement will run to and for the benefit of any other corporation or company which may exist or be formed or in which the Employer may have a substantial interest, if such subsidiary is engaged in building construction work covered by this Agreement.

**Section 2.** The Employer agrees that it will be responsible and liable for payment of all wages and fringe benefits for any Subcontractor who has NOT signed an agreement with the New York City District Council of Carpenters, and who is engaged by the Employer to perform work that falls within the jurisdiction as set forth herein of the New York City District Council of Carpenters.

**Section 3.** The use of safety equipment and appliances furnished by the Employer is mandatory, and the failure to employ the use of such equipment and appliances, after due warning, is sufficient cause for dismissal.

**Section 4.** If an employee is required to use Powder Actuated Tools, he is to be qualified to use said Powder Actuated Tools, by

securing from the tool manufacturer an operator's card or similar proof of qualification, and the Union shall cooperate with the Employer and Tool Manufacturer in having the employee expeditiously qualified. No Powder Actuated Tools shall be used that have not been previously approved by the State Board of Standards and Appeals.

**Section 5.** Every signatory Employer party to this contract shall notify the District Council and the Association on its specified form, by Fax, Certified Mail or Telephone, of the awarding of any contract on which any of the work described in **Article III** hereof shall be performed by said Employer or a Subcontractor. Said notice shall include the location of the job and the name and address of the Contractor or Subcontractor involved. Failure to comply with the **section** shall be a breach of this Agreement and shall authorize the Union to remove its members from any job on which said Contractor or Subcontractor has not complied with this notice. The aforesaid notice shall be given within thirty (30) days of the award of a contract, and, in any event, prior to the commencement of work, or, after the cessation of work, prior to the recommencement thereof. It is understood that the provisions of this **section** will be strictly enforced by the Union. Further, after notification has been given to the Union by the Employer, as set forth above, a prejob conference will be

51

held, if one is requested by the Union.

Section 6.  The Employer shall provide a suitable tool shed or room of sufficient size for the storage of the Carpenter Tools and clothing, and Tool Shed or Room shall be heated in the winter.  The door shall be constructed that the hinges and hasp cannot be removed from the outside.  Such Tool Shed or Room shall not be used for the storage of any other materials.  Where such storage facilities are provided, the STEWARD OF THE JOB shall be furnished with a key to the Tool Shed or Tool Room, and the employees will store therein all the tools not actually being used by them at any time.  On every job the Employer shall provide a suitable locker.  In buildings over ten (10) stories high, a locker is to be provided on every fifth (5) floor.

Section 7.  The Employer shall reimburse each employee for any of the tools or clothing which are destroyed by fire or any other Act of God, or which may be stolen by forcible entry of the locker or shed, or damaged on the project site; provided, that if the Employer has complied with the provision of Section 6, he shall be responsible and liable for such loss or injury only if it occurs while such tools or clothing are in the Tool Shed or Tool Room, provided further that the Employer's liability shall be limited to not more than the following:

| Tools | $600.00 (finish) |
| Overcoat | $500.00 (concrete) |
| Other Clothing | $150.00 |
| Shoes | $150.00 |
| | $125.00 |

Employees shall be advised by the Shop Steward to keep any excess tools on the jobsite. Proof of loss must be filed within forty-eight (48) hours of the actual loss and payment of the above described claim must be made within fourteen (14) working days of the receipt of the proof of loss. Any disputed claims shall be resolved pursuant to **Article XIII** hereof.

**Section 8.** Tools belonging to the employees which are dulled on the job, shall be reconditioned at the expense of the Employer by an employee covered under this Agreement.

**Section 9.** Each employee begins their employment at the check-in shanty at 8:00 a.m., and shall arrive in working clothes, UNLESS OTHERWISE NOTED.

**Section 10.** The parties agree that there shall be no discrimination in the employment, hiring, referral or training of employees in the bargaining unit on the basis of race, creed, color, sex, national origin, age, disability, marital status, citizenship status, sexual orientation or affectional preference, Union membership or non-membership in all employment decisions, or Union activity as defined in applicable federal, state or local laws. For the purposes of this **Article**, "citizenship status" means

53

the citizenship of any person, or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

Section 11. Where for the benefit of an Employer, an employee must cross a body of water in order to reach the jobsite and there is no public transportation available to said site, then it shall be the duty of the Employer to provide adequate safety and comfort for the employee's transportation. The Employer shall protect such employee under a policy of public liability insurance or any other insurance required by law for any public conveyance. Such certificate shall be posted in a conspicuous place, on any conveyance used by the Employer. Should such transportation, whether private or public, require extraordinary fare, such fare shall be paid by the Employer. The employee shall not leave the shore opposite the jobsite earlier than 8:00 a.m. and shall return to the same shore not later than 3:30 p.m., except as provided herein.

Section 12. When the Employer does any work outside the jurisdiction covered by this Agreement, he shall conform to the wages and other terms and conditions of employment that exist between the Employers and employees of such jurisdiction; however, when the Employer hires members into and from this jurisdiction covered by this Agreement, the terms and conditions of this

54

Agreement, including wages and fringe benefits provided herein shall apply.

Section 13.   The Employer agrees that if it performs any service or work described in the Trade Agreements of the District Council of Carpenters of New York State within the geographic jurisdiction of the above-mentioned District Councils, it shall be bound by all the terms and conditions of the Trade Agreement applicable to the location where said service or work is being performed for the period of time that said service or work is being performed in said location in the same manner as if it were a direct signatory to the applicable Trade Agreement.

Section 14.   The Employer agrees to be bound to one of the promotional or advancement funds in this agreement.

Section 15.  In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed that when the Employer performs work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer exercises either directly or indirectly any significant degree of ownership management or control, the terms and conditions of this Agreement

55

including Fringe Benefits shall be applicable to all such work.

(a)    All charges of violations of this **section** shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding arbitration as provided in **Article XIII**, of this Agreement.  As a remedy for violations of this **Section**, the arbitrator (or arbitration body) provided for in **Article XIII**, is empowered at the request of the Union, to require an Employer (1) To pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations; and (2) To pay into the affected joint trust funds established under this Agreement any delinquent contributions together with interest, penalty and liquidated damages to such funds as provided in the Agreement.  Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union or the Trust Fund(s) for violation of this **Section**; nor does it make the same or other remedies unavailable to the Union or the Trust Fund for violations of other **Sections** or **Articles** of this Agreement.

(b)    If, as a result of violations of this **Section**, it is necessary for the Union and/or Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (a) above, or to defend an action which seeks to

vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or Fund Trustees, plus costs of litigation, which have resulted from the bringing of such court action.

**Section 16.** The Union shall furnish upon the request of the Employer until the expiration of the Agreement in a reasonable time after request, except in cases of strikes and other circumstances over which it has not control, all Carpenters and joiners, including all classifications as referred to in, **Article III**.

**Section 17.** All work covered by this Agreement shall be contracted or subcontracted only to an Employer who is signatory to or agrees to become signatory to a collective bargaining agreement with the Union. The parties hereto mutually agree with respect to such work falling within the scope of this Agreement that is to be done at the site of construction, alteration, maintenance, or repair of any building, structure, or other works. If the Employer should contract or subcontract any of the afforested works falling within the trade jurisdiction of the Union as set forth herein, said Employer shall contract or subcontract such work only to firms which comply with the standards of wages and fringe benefits and working conditions established herein.

**Section 18.** There shall be a pre-job conference before the starting of any major job.

57

Section 19. All Employers will make sure that any products they ask Carpenters to handle will have a United Brotherhood of Carpenters stamp on it as long as it is within their power to do so.

Section 20. All Carpenters will be given time to wrap up their tools and wash up before lunch and quitting time.

Section 21. There will be no quotas imposed on Carpenters working on a jobsite.

Section 22. Any Employer found guilty of offering cash to Carpenters for hours worked shall pay a fine of five thousand ($5,000.00) dollars to the Carpenter's Relief and Charity Fund after he has paid monies that were due to the Benefit Funds. This will be decided through the collective bargaining agreement grievance and arbitration clause.

Section 23. In order to protect and preserve for the employees engaged in the manufacturing of custom fixture and mill cabinet products used in the trade, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed that all custom manufactured mill cabinet and architectural woodwork products which are specified and required in the Employers contract with the client, including doors specifically designed as matching components of said products, shall be fabricated in a signatory shop within an area encompassing

58

the five boroughs of New York City and extending approximately 40 miles beyond the city's borders. Doors, jambs and related components which do not fall within the stated category will be excluded from this provision.

Section 24. All Carpenters will be allowed a ten minute coffee break in the morning. This will also be allowed in the afternoon when working 40 hours.

Section 25. The Union and the Association agree to explore other forms of worker's compensation insurance, such as Alternative Dispute Resolution (ADR), to help our Union Contractors be more competitive.

## ARTICLE XIX

## Promotional Fund

Section 1. All Employers covered by this Agreement shall contribute fifteen (.15) cents for every hour worked by the employees of said Employers for work defined by this Agreement.

Section 2. The Benefit Fund office of the District Council shall advise the Union and the Promotional Fund of the Association whenever an Employer shall be in default in the payment of contributions due the Promotional Fund of the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated.

Section 3. Each Employer shall be bound by all the terms

59

and conditions of the Agreement and Declaration of Trust by and between each signatory of this Agreement, creating the Industry Promotional Fund for the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated and by all By-Laws adopted to regulate said Fund. The Trustees of said Fund shall secure the approval of the Treasury Department under the applicable provisions of the Internal Revenue Code, and shall amend the same if necessary to secure such approval, so as to qualify the Employer contributions as deductions for Federal Income Tax purposes.

**Section 4.** All Employer contributions to the Industry Promotional Fund for the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated shall be remitted with the stamp plan contributions for the Benefit Funds. The bank servicing the Benefit Funds shall deliver all such contributions to the Promotional Fund of the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated after verifying that the amount of each such contribution has been correctly computed by the Employer.

**Section 5.** The Industry Promotional Fund for the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated shall reimburse the Carpenters' Fringe Benefit Funds all expenses incurred by it, for services rendered by it.

**Section 6.** The Promotional Fund and all payments

thereunder may not be used for lobbying in support of anti-labor legislation and for any purpose contrary to the interest of the New York City District Council of Carpenters nor for subsidizing of any Contractor during periods of work stoppage or strikes.

Section 7.    There shall be established by this Agreement a Joint Review Committee, consisting of two (2) members appointed by the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated, whose duties among other things, should be to periodically review any increase or decrease in the amount of the Surety Bond as the case may be, or in the event of a default of the terms and conditions of the Collective Bargaining Agreement by signatory Employer when engaged in Drywall Construction as defined in **Article III**, where a new, different, or additional bond is required; and to perform such other duties and services as may serve to upgrade and maintain the standards of proficiency of Drywall Installation, and to create greater work opportunities for members of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America.

## ARTICLE XX

## Expiration Clause

This Agreement shall be binding on the Employer and the Union, their successors and assigns. The duration of this Agreement

61

shall continue until June 30, 2006 and shall be renewed automatically for one year intervals thereafter unless notice to the other at their last known address has been provided by either party by certified and regular mail no more then ninety (90) days nor no less than sixty (60) days before the Agreement expiration that such party seeks to negotiate a new Agreement or modify or amend this Agreement through negotiations. Once negotiations have commenced, neither party will seek to alter unilaterally the terms or conditions of employment of employees covered by this Agreement until such terms have been changed by execution of a newly negotiated agreement.

## ARTICLE XXI

### Retroactivity

It is mutually agreed that all wages, fringe benefits and conditions provided for in this Agreement shall be retroactive to and effective as of July 1, 2001.

## ARTICLE XXII

### Effectuating Clause

The parties hereto make and enter into this Agreement, in witness whereof, we, their duly authorized and empowered representatives, have hereunto set out hands and seal this 1st day of July, 2001.

For THE ASSOCIATION OF WALL-CEILING & CARPENTRY INDUSTRIES OF NEW YORK, INCORPORATED

By: _____          Date _____

For the Union:
DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA.

By: _____

The Trade Association and/or the Employer, signatory to this Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; Annuity Fund; United Brotherhood of Carpenters and Joiners of America Fund; Vacation Fund; New York City and Vicinity Joint Labor Management Cooperation Trust Fund and Supplemental Fund.

By: _____

63

THE ASSOCIATION OF WALL-CEILING & CARPENTRY INDUSTRIES OF NEW YORK INC.

125 JERICHO TURNPIKE - SUITE 301 - JERICHO, N.Y. 11753  (516) 478-5600  FAX (516) 478-5601

June 17, 2004

New York District Council of Carpenters
395 Hudson Street
New York NY 10014

Att:    Mr. Charles Poekel, Jr.

Re:    Membership Roster

Dear Mr. Poekel:

Enclosed herewith is a current roster of the members of the Association of Wall-Ceiling & Carpentry Industries of New York, Inc. who have designated the Association to act on their behalf for the current Collective Bargaining Agreement.

We will from time to time as is necessary or required, provide your office with updated rosters for your use.

Should you have any questions, please do not hesitate in calling.

Very truly yours,

Erwin Popkin
Counsel

EP/dlh
Encls.
cc:  Mr. Phil Guidice
     Mr. Joseph Olivieri
(dictated but not read)

**EXHIBIT**

1B

## NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS - PAGE THREE

**ECLIPSE CONSTRUCTION SERVICES INC.**
1725 N Strong Ave
Copiague NY 11726
(631) 789-0503

**ELITE ACOUSTICS INC.**
367 W Woodside Ave
Patchogue NY 11772
(631) 289-4198

**ELITE CONSTRUCTION of STATEN ISLAND INC.**
30A Grille Ct.
Staten Island NY 10309
(718) 273-6643

**EMI CONSTRUCTION LLC**
50 Main St 15th Fl
White Plains NY 10606
(914) 993-5970

**EMPIRE DRYWALL CORP.**
62-58 60th Rd.
Maspeth NY 11378
(718) 821-8222

**EMPIRE INTERIOR SYSTEMS**
190 Oval Dr.
Islandia NY 11749
(631) 234-9200

**EXTERIOR ERECTING SERVICES INC.**
2092 Rt 130
Burlington NJ 08518
(609) 499-3773

**FARLEY -SALES INSTALLATIONS**
1180 Lincoln Ave  Unit 9
Holbrook NY 11741
(631) 661-9220

**FIVE BROTHERS, INC.**
5021 Industrial Road
Farmingdale NJ 07727
(732) 919-7990

**FORSYTH INTERIORS INC.**
30 Huff Terrace
Montvale, NJ 07645
(201) 967-0893

**FRANCIS A LEE EXT. REST. CORP.**
41 Bethpage Rd.
Hicksville NY 11801
(516) 938-6677

**GIRANDOLA & SHUTKING CONSTR.**
355 Food Center Dr.  #F-101
Bronx NY 10474
(718) 842-4471

**GLENN PARTITION INC.**
78 Morton St.
New York NY 10014
(212) 243-2800

**GODSELL CONSTRUCTION CORP.**
351 Duffy Ave.
Hicksville, NY 11801
(516) 939-0280

**IGM CONSTRUCTION INC.**
880 E 141st St.
Bronx NY 10454
(718) 585-6904

**INTEGRATED STRUCTURES CORP.**
41 Bethpage Rd.
Hicksville NY 11801
(516) 937-9200

**INTEL INTERIORS INC.**
190 Sterling Ave.
Yonkers NY 10704
(914) 237-2325

**INTERIORS LTD.**
327 Hempstead Ave.
W. Hempstead NY 11552
(516) 505-9102

**INTERSTATE DRYWALL CORP.**
2 Brighton Rd  Ste 200
Clifton NJ 07012
(973) 574-9400

**INTRICATE CARPENTRY INC.**
PO BOX 159
Bronxville NY 10708
(914) 793-5312

**ISLAND ACOUSTICS LLC**
518 Johnson Ave.
Bohemia NY 11716
(631) 234-4500

**ISLAND ADC, INC.**
4061-82 Grumman Blvd.
Calverton NY 11933
(631) 208-3500

**J.P. PHILLIPS, INC.**
BOX 1236
Manhasset, NY 11030
(516) 365-3697

**JT MACK CONSTR. CORP.**
309 Rose La.
Smithtown NY 11787
(631) 834-4144

**JACOBSON & CO., INC.**
1079 E. Grand St. POB 511
Elizabeth NJ 07201
(908) 355-5200

**JCI/JOY CONTRACTORS, INC.**
4354 Victory Blvd
Staten Island NY 10314
(718) 761-9607

In the Matter of:

-----------------------------------------------------------x

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, and THE NEW
YORK CITY AND VICINITY CARPENTERS LABOR-         NOTICE OF
MANAGEMENT CORPORATION, By MICHAEL               INTENTION TO
J. FORDE and PAUL O'BRIEN, as TRUSTEES,          ARBITRATE

       Petitioners,

      -against-

Empire Interior Systems

       Respondent.

-----------------------------------------------------------x

      PLEASE TAKE NOTICE, that the NEW YORK CITY

DISTRICT COUNCIL OF CARPENTERS PENSION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS VACATION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS APPRENTICESHIP,

JOURNEYMAN RETRAINING, EDUCATION AND INDUSTRY FUND, NEW

YORK CITY DISTRICT COUNCIL OF CARPENTERS CHARITY FUND, and

THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-

MANAGEMENT CORPORATION, by MICHAL J. FORDE, and PAUL

O'BRIEN as TRUSTEES, (the "Funds") hereby demand and intend, pursuant to the

provisions of the collective bargaining agreement between Empire Interior Systems

**EXHIBIT**
3

and the District Council of New York City and Vicinity of the United Brotherhood of

Carpenters and Joiners of America, to conduct an arbitration before Arbitrator Robert E.

Maher against Empire Interior Systems with the respect to the following controversy:

      To compel to permit the Funds to conduct an audit of its books and records for

the period 3/29/2004 through date to determine whether is in compliance with

its obligation to contribute to the Funds.

      Pursuant to CPLR 7503 (c), unless you apply within twenty (20) days after the

service of this notice for a stay of the arbitration, you will thereafter be precluded from

objecting that a valid agreement was not made or has not been complied with and from

asserting in court the bar of limitations of time.

Dated:    January 17, 2007

By: _____

Steven C. Kasarda, Esq.
Counsel for Delinquencies & Collections

To:  Roger Maher
    23 83rd Street
    Brooklyn, NY 11209-18

    and

| Empire Interior Systems | Association of Wall & Ceiling | Mr. Erwin Popkin |
|---|---|---|
| 190 Oval Drive | 125 Jericho Turnpike | 500 N. Broadway ste.101 |
| Islandia, NY 11788 | Jericho, NY 11753 | Jericho, NY 11753 |
| Attn: Mr. John Delollis | Attn: Mr. Joseph Olivier | |

VIA CERTIFIED MAIL
RETURN RECEIPT REQUEST  (To Employer)

16060

**ROGER E. MAHER**
Office of Impartial Arbitrator

**23  83rd Street**
**Brooklyn, New York 11209**

Office: 718 238-5143
FAX : 718 491-4187

### NOTICE OF HEARING

--------------------------------------------------------------------------------x

## IN THE MATTER OF ARBITRATION BETWEEN

The New York District Council of Carpenter Pension Fund, New York City District Council of Carpenters Welfare Fund,  New York City District Council of Carpenters Vacation Fund, New York City District Council of Carpenters Annuity Fund, New York City District Council of Carpenters Apprenticeship, Journeyman, Retraining, Educational & Industry Fund, New York City District Council of Carpenters Charity Fund, The New York and Vicinity Carpenters Labor Management Corporation Fund, by Michael J. Forde and Paul O'Brien, as Trustees and Michael J. Forde as Executive Secretary-Treasurer, District Council For New York City and Vicinity, United Brotherhood Carpenters and Joiners of America.

**Petitioners,**

-against-

**Empire Interior Systems**              **Respondent**

--------------------------------------------------------------------------------x

**ISSUE:** Fringe Benefits due for    **Audit Period**
                                       03/29/2004    through    **DATE**          **Amount Due:**
                                                                                  T.B.D.

And all amounts due under the Collective Bargaining Agreement and prior to arbitration.

Dear Sir/Madam:

Please be advised that a hearing in the above captioned matter has been **scheduled** as follows:

**DATE:** April 25,2008

**TIME:** 1:00 PM.

**LOCATION:** New York District Council of Carpenters Benefit Fund
395 Hudson Street
New York, New York    9th floor conference room

Please be present and ready at that time with whatever witnesses you intend to adduce as well as any other records which you deem necessary and pertinent to the issue.  Failure to appear may result in a default award against you.

Very truly yours,

**Roger E. Maher**
Arbitrator

**DATED:** March 7, 2008
Via Regular Mail  & Certified Mail Return Receipt Requested  # 70073020000107299632

CC:    Steven Kasarda, Esq.
       Thomasina Caba                              CC: Erwin Popkin
       Joseph Olivieri
       **Empire Interior Systems**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS
OF AMERICA FUND and THE NEW YORK CITY
AND VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION, by MICHAEL J.
FORDE and PAUL O'BRIEN, as TRUSTEES, and
MICHAEL J. FORDE, as EXECUTIVE SECRETARY-
TREASURER, DISTRICT COUNCIL FOR NEW YORK
CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

08 CV 4844 (DLC)
ECF CASE

**AFFIDAVIT OF
SERVICES**

Plaintiffs,

-against-

EMPIRE INTERIOR SYSTEMS, INC.,

Defendant.
-------------------------------------------------------------------X
STATE OF NEW YORK          )
                          :SS.:
COUNTY OF NEW YORK         )

ANDREW GRABOIS, being duly sworn, deposes and says:

1. I am a member of the Bar of this Court and am associated with the firm of O'Dwyer &
Bernstien, LLP, attorneys for plaintiffs herein and submit this affidavit in support of the instant
application for default judgment and order.

2.  On May 22, 2008, Rich Gage, a paralegal in this office, drafted and revised a complaint, cover sheet and other required documents.  He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

3.  On May 23, 2008, your deponent reviewed and finalized the aforementioned documents.  I spent 0.5 hours at a billing rate of $350.00 per hour for a total of $175.00 in attorneys' fees.

4.  On May 23, 2008, Mr. Gage prepared and filed the aforementioned documents with the Clerk of the Court.  He spent 1.0 hours at a billing rate of $125.00 per hour for a total of $125.00 in attorneys' fees.

5.  On May 23, 2008, Mr. Gage prepared and filed the aforementioned documents on the Electronic Case Filing system.  He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

6.  On May 27, 2008, Mr. Gage prepared and mailed the aforementioned documents for service of process.  He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

7.  On June 5, 2008, Mr. Gage prepared and filed the affidavit of service with the Court and on the ECF system.  He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

8.  On July 17, 2008 and July 21, 2008, Mr. Gage drafted the required default documents, including a proposed default judgment and order and affidavit of services rendered.  He spent a total of 2.0 hours on this matter at a billing rate of $125.00 per hour for a total of $250.00 in attorneys' fees.

9.  On July 21, 2008, your deponent reviewed and finalized the aforementioned default documents.  I spent 0.5 hours on this matter at a billing rate of $350.00 per hour for a total of $175.00 in attorneys' fees.

10. On July 22, 2008, your deponent drafted, edited, and revised a memorandum of law, and reviewed exhibits for the declaration. I spent 2.0 hours on this matter at a billing rate of $350.00 per hour for a total of $700.00 in attorneys' fees.

11. On July 22, 2008, Mr. Gage prepared and filed the memorandum of law and declaration with the Court and on the ECF system. He spent 2.0 hours on this matter at a billing rate of $125.00 per hour for a total of $250.00 in attorneys' fees.

12. The cost of the process server to effectuate service of process was $60.00.

WHEREFORE, deponent respectfully requests allowance of attorneys' fees in the sum of $1,925.00 and costs arising out of this action in the amount of $60.00 for a total of $1,985.00.

ANDREW GRABOIS (AG 3192)

Sworn to before me this
22nd day of July, 2008

NOTARY PUBLIC

PATRICIA CRISCUOLI
Notary Public, State of New York
No. 24-4976573
Qualified in Richmond County
Commission Expires 1/14/2011

STATE OF NEW YORK    )
                     :SS.:
COUNTY OF NEW YORK   )

RICH GAGE, being duly sworn, deposes and says:  I am not a party to the action, am over 18 years of age and reside in Brooklyn, New York.  On the 22nd day of July, 2008, I served **JUDGE DENISE COTE'S ORDER DATED JULY 21, 2008** and plaintiffs' **MEMORANDUM OF LAW and DECLARATION with SUPPORTING DOCUMENTATION** to the following party by depositing a true copy thereof in a post-paid wrapper, in an official depository, under the exclusive care and custody of the United States Postal Service within New York State, addressed to the following person at the last known address set forth after the name below:

TO:    Empire Interior Systems, Inc.
       190 Oval Drive
       Islandia, NY 11788

RICH GAGE

Sworn to before me this
22nd day of July, 2008

NOTARY PUBLIC

PATRICIA CRISCUOLI
Notary Public, State of New York
No. 24-4976573
Qualified in Richmond County
Commission Expires 1/14/2011